UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:
    Terry S. Hearn

                Debtor(s).

Case No. 04-62224-PJS
Chapter 7
HON. Phillip J. Shefferly

_____/

Terry S. Hearn,

        Plaintiff,
v.

Adversary Case No. 05-5330
HON. Phillip J. Shefferly

The Bank of New York and
Countrywide Home Loans, jointly and severally,

        Defendant.

_____/

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S ANSWER TO DEFENDANT, COUNTRYWIDE HOME LOANS,**
**AS NOMINEE FOR BANK OF NEW YORK'S , MOTION FOR SUMMARY**
**JUDGMENT PURSUANT TO F. R.BANKR.P. 7056**

**INTRODUCTION**

Plaintiff/Debtor, Terry S. Hearn, hereinafter referred to as "Debtor" filed the underlying Complaint against Defendant Countrywide Home, as Nominee for Bank of New York, herein after referred to as "Countrywide" stating that in accordance with the proof of claim filed on its behalf it should be treated as an unsecured creditor pursuant to 11 U.S.C. § 544. Debtor has concurrently also filed an objection to the proof of claim filed by Countrywide. Debtor is seeking to have the claim of a security interest by Countrywide avoided and thus treat the secured creditor in accordance with the unperfected secured proof of claim that it has filed with the court.

Debtor has standing to file an avoidance action pursuant to 11 U.S.C. § 544. Avoidance powers under 11 U.S.C. § 544 are not exclusive to the Chapter 13 Trustee. On November 24, 2004, this court confirmed the Debtor's chapter 13 plan which provided that the Debtor had standing to bring an action for avoidance pursuant to 11 U.S.C. § 544. Countrywide failed to object to the provision prior to confirmation thereby affirming the standing of the Debtor. Countrywide is barred pursuant to 11 U.S.C. § 1327 to affirmatively assert now that Debtor does not have standing to avoid the security interest of Countrywide pursuant to the avoidance powers of 11 U.S.C. § 544.

The lien of Countrywide may be avoided after confirmation inasmuch as the confirmed plan provided that secured creditors, including Countrywide, retained their status of lien holder subject specifically to the avoidance powers of 11 U.S.C. § 544 to be exercised by the Debtor. It also reserved the right of the Debtor to object to the proof of claim of Countrywide. Countrywide, therefore, is barred by 11 U.S.C. § 1327 to assert that it has a confirmed status as a secured creditor as the plan conditionally granted it a status as a lien holder. There are no equitable principles available to Countrywide to assert either the lack of standing of the Debtor or *res judicata* as Countrywide always knew of the lack of perfection of its security interest prior to confirmation. Countrywide delayed its request to this Court to lift the Automatic Stay to allow perfection of its lien by permitting the recording of its mortgage, until after confirmation, in an attempt to exploit confirmation process and retain permanently its status as lien holder.

## FACTS

Debtor filed his chapter 13 bankruptcy on August 6, 2004. On August 20, 2004, the Debtor filed his Summary, Schedules, Statement of Affairs and initial Chapter 13 Plan. Debtor's schedules and Plan list and treat the claim of Countrywide as secured holding a security interest in Debtor's residence.

Debtor does not dispute that he granted Encore Credit Corporation a security interest in his residence on September 24, 2003 or that there has been an assignment of that security interest to the Bank of New York, hereinafter referred to as "Bank", and Countrywide as Bank's nominee as servicing agent.

In the Brief attached to their Motion for Summary Judgment, Countrywide admits that the security interest granted by the Debtor to Countrywide was never recorded with the register of deeds and, therefore, is not perfected. The further statement by Countrywide that a check was issued by Title One to record the mortgage and the identity number of the checks are irrelevant to this court's consideration.

On September 15, 2004, Trott & Trott, P.C. filed an appearance as attorneys for Countrywide. (Docket # 23) On October 8, 2004, Countrywide filed its proof of claim with the court. (Claims register #8)

It is admitted by Countrywide and Debtor that Countrywide filed a First Amended Chapter 13 Plan on October 26, 2004. The amended plan superceded the prior chapter 13 plan filed on August 20, 2004 and was confirmed by this Court on November 24, 2004.

There are several salient provisions of the confirmed Chapter 13 plan which are relevant to the positions of the

2

parties herein. The foremost among them is located in II.B., which states:

> All secured creditors shall retain the liens securing their claims **subject to the avoidance powers of the Debtor granted herein** and provided the Debtor retains possession of the collateral and unless otherwise stated. **Debtor shall have standing** to commence turnover actions under 11 U.S.C.§542, **to assert strong-arm powers under 11 U.S.C. §544**, to avoid statutory liens under 11 U.S.C. §545, to recover preferences under 11 U.S.C. §547 and/or to avoid fraudulent conveyances under 11 U.S.C.§548 **and in furtherance thereof commence adversary proceedings**.(Emphasis added)

In support of the above provision, the confirmed chapter 13 plan also provides under paragraph II.F.3.that:

> If a holder of a claim files a proof of claim at variance with this Plan or related schedules, the Trustee shall automatically treat that claim as the holder indicated, **unless provided otherwise by order of the Court.** (Emphasis added)

Continued support is found in paragraph II. F 4, which emphatically states:

> **NOTE:** Debtor reserves the right to object to any claim.

Creditors who receive the chapter 13 plan are alerted to the provision under II. B. above as a departure from the model chapter 13 plan in use in the Bankruptcy Court for the Eastern District of Michigan. Paragraph II. A. of the confirmed Chapter 13 Plan states:

> **THIS PLAN FOLLOWS THE TRUSTEE'S PLAN IN ALL RESPECTS, WITH THE EXCEPTION OF: I.D.1.b. & I. D. 2b. & I. D. 4 & I. D. 5 & I. D. 8 & II. B. & II. F. 1 & II. M.**

Despite the above provisions which put Countrywide on notice that its status as a lien holder and hence its proof of claim could be subject to the scrutiny of the court, Countrywide failed to object to the conditional retention of its lien by the Amended Chapter 13 Plan.

It appears that Countrywide's failure to object to the above provisions of the confirmed plan was for the reason that such an objection would have drawn the attention of the court to its unrecorded and hence unperfected lien. No sooner had the chapter 13 plan been confirmed then Countrywide sought the stipulation of the Trustee and Debtor's counsel to lift the automatic stay to permit the recording of its mortgage and hence perfection of its secured claim to remedy the deficiency of its proof of claim. (Brief page 3) Such a request to the chapter 13 Trustee was tantamount to a request the chapter 13 Trustee commit further malpractice by putting the challenge of Countrywide's claim of security beyond the reach of a chapter 7 Trustee in the event of the Debtor's conversion to a Chapter 7. Indeed, Countrywide emphasizes in its Brief page 3 that "Trustee never filed an objection to Countrywide's Motion for Relief or filed her own Complaint to avoid Countrywide's Mortgage." Countrywide admits and the record of this court confirms the fact that

3

Countrywide initiated a Motion for Relief from Stay for the Limited Purpose of Recording Mortgage and Assignment on June 16, 2005 after its efforts to obtain a stipulation were ignored.

Debtor admits that he did not check the recording status of Countrywide. Debtor relied upon Countrywide to record its mortgage at closing or soon thereafter. Unless the Debtor received a specific request by the chapter 13 Trustee to produce a recorded mortgage during the confirmation process, Debtor would not and did not in this case review the title. Debtor received no such request by the chapter 13 Trustee. Debtor relied upon his confirmed right to object to the proof of claim of Countrywide.

Countrywide must admit that it did not bother to challenge the provisions mentioned above in the confirmed chapter 13 plan prior to confirmation although it was represented by counsel. Nor did it bother to raise the issue of its lift of stay to obtain the recording and perfection of its lien prior to confirmation. Countrywide instead laid in wait until after confirmation to raise these issues seeking to be protected by the principals of *res judicata* or collateral estoppel.

Debtor concurs that this court rendered a decision on July 1, 2005, which denied Countrywide its request for relief from the automatic stay for the purpose of recording and hence perfection of its lien and secured status. The court concurred with the Debtor that he had standing to avoid the lien of Countrywide.

Debtor admits to filing an Objection to the Proof of Claim on September 26, 2005. The filing of the Objection was only a mere formality as the issues raised in the Objection are the identical issues raised in this adversary lawsuit. Indeed, the issues raised by the Objection could only be raised and sustained by the concurrence of the within adversary lawsuit. The within adversary lawsuit was commenced on June 17, 2005. The commencement of this adversary lawsuit was well within the one year or two year statute of limitations period provided in 11 U.S.C. §546.

## LAW AND ARGUMENT

### Standard of Review

Debtor agrees with Countrywide as to the standard of review and that there exists no genuine issue as to fact. It is only appropriate, however, for this Court to issue a summary judgment in Debtor's favor. Debtor will be using this brief for his own request for summary judgment before this court.

**I.    COUNTRYWIDE IS BARRED PURSUANT TO 11 U.S.C. § 1327 TO ASSERT DEBTOR'S LACK OF STANDING TO COMMENCE AN ADVERSARY COMPLAINT TO AVOID ITS LIEN AND HENCE ITS SECURED CLAIM.**

11 U.S.C. § 1327 provides:

4

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, accepted, or has rejected the plan.

The Debtor's confirmed chapter 13 plan provided in paragraph II. B. as follows:

> All secured creditors shall retain the liens securing their claims **subject to the avoidance powers of the Debtor granted herein** and provided the Debtor retains possession of the collateral and unless otherwise stated. **Debtor shall have standing** to commence turnover actions under 11U.S.C.§542, **to assert strong-arm powers under 11 U.S.C. §544**, to avoid statutory liens under 11 U.S.C. §545, to recover preferences under 11 U.S.C. §547 and/or to avoid fraudulent conveyances under 11 U.S.C.§548 **and in furtherance thereof commence adversary proceedings**.(Emphasis added)

There is a split of authority as to whether chapter 13 debtors have standing to avoid statutory liens under section 545.19

2-545 Collier Bankruptcy Manual, 3rd Edition Revised P 545.01:

> In In re Freeman, 72 B.R. 850, 853 & 854 (1987) the Court states:
>
> By virtue of section 103(a) of the Code, all provisions of Chapter 5 including the trustee's avoidance powers enumerated in that Chapter, are applicable and operable in cases filed under Chapters 7, 11, 12 and 13. *See* Matter of Hall, 26 B.R. 10, 11 (Bankr. M.D. Fla. 1982); *In re Boyette,* 33 B.R. 10 (Bankr. N.D. Tex. 1983). Clearly, then, if the trustee in the Freemans' Chapter 13 case had sought to avoid Eli Lilly's unperfected security interest, he could have done so by virtue of the hypothetical lien creditor status afforded by §§ 544(a). The question is whether the Freemans -- as the Chapter 13 *debtors* -- should be permitted to utilize the same avoiding power. Although there is a substantial split of authority among the courts which have considered this issue, this Court is satisfied that in cases such as this one, where the trustee does not act, the debtor himself may exercise the trustee's "strong arm" powers under §§ 544(a).
> The Court's conclusion is based in large part upon the different practical role which the trustee plays in a Chapter 13 case. Unlike the trustee under Chapter 7 or Chapter 11, the Chapter 13 trustee's functions are restricted to essentially administrative matters. *In re Ciavarella,* 28 B.R. 823, 827 (Bankr. S.D.N.Y. 1983). His basic role is to review plans, advise the Court with respect to plans and act as a disbursing agent under confirmed plans, *Matter of Einoder,* 55 B.R. 319, 323 (Bankr. N.D. Ill. 1985); therefore he does not possess the full panoply of weapons available to a trustee under the other chapters. *Ciavarella,* 28 B.R., at 827.
> While the trustee is the representative of the estate and thus the only party with actual standing to pursue avoidance actions under §§§§ 544-553 of the Bankruptcy Code, he in fact rarely does so because of the disproportionate personal benefit gained in comparison to time and effort spent. In addition, the Chapter 13 trustee is often not in a position to litigate actions under the avoiding powers, and even if he should successfully pursue such an action, any recovery which he might make would become property of the estate and go to the debtor. Id. at 322.
> The reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case. *Ciavarella,* 28 B.R., at 827, *citing In re Cook,* 26 B.R. 187 (Bankr. D.C.N.M. 1982). It is the debtors who determine whether to remain in Chapter 13 and decide how much money is to be paid to the trustee for distribution to creditors. *Einoder,* 55 B.R., at 323. Therefore, it is only logical that they should be extended the powers possessed by the trustee which work toward enhancing their own bankruptcy estate. Beyond these practical considerations, the legislative history of the Code -- specifically, §§ 1303 -- also supports a holding that the trustee's avoidance powers may likewise be exercised by the Chapter 13 debtor. Section 1303 n3 delineates specific rights and powers, dealing primarily with use, sale and lease of property, which the Chapter 13 debtor may exercise *exclusive* of the trustee. The legislative history to that section states:

Section 1303 of the House Amendment specifies rights and powers that the debtor has exclusive of the trustees. *The section does not imply that the debtor does not also possess other powers concurrently with the trustee.* For example, although section 1323 is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued. (emphasis [**13] added) 124 Cong. Rec. H. 11,106 (Sept. 28, 1978); S. 17,423 (Oct. 6, 1978).

Although the issue of Debtor's standing to commence an avoidance action pursuant to 11 U.S.C.§ 544 is raised in the brief of Countrywide in its Introduction, it is thereafter never seriously argued. Debtor relies upon the logic and reasoning set forth in Freeman above as being dispositive of the issue of standing.

Debtor also relies upon the terms of the confirmed plan. Since the above plan provisions could only become effective upon confirmation, Countrywide was put on notice at the time of confirmation that the Debtor would have standing in the future to challenge its secured proof of claim by avoiding its lien. Debtor, therefore, agrees with many of the cited authorities by Countrywide which indicate that the parties herein are mutually bound by the terms of a confirmed chapter 13 plan.

**II. COUNTRYWIDE IS BARRED PURSUANT TO 11 USC § 1327 TO ASSERT IT STATUS AS A LIEN HOLDER AND HENCE A SECURED CREDITOR WHERE THE CONFIRMED CHAPTER 13 PLAN SPECIFICALLY PROVIDES THAT ITS LIEN IS SUBJECT TO THE AVOIDANCE POWER OF THE DEBTOR UNDER 11 U.S.C. § 544.**

Debtor's confirmed Chapter 13 plan in effect relies upon the claims objection process and not confirmation as being dispositive of its treatment in the chapter 13 plan. In particular, it relies upon paragraph II.F.3. which provides:

> If a holder of a claim files a proof of claim at variance with this Plan or related schedules, the Trustee shall automatically treat that claim as the holder indicated, **unless provided otherwise by order of the Court.** (Emphasis added)

Debtor also relies upon paragraph II. F 4, which emphatically states:

> **NOTE:** Debtor reserves the right to object to any claim.

In conjunction with paragraph II.B. above, the confirmed plan makes it abundantly clear that Countrywide should not rely upon the confirmation process as being dispositive of its future treatment as a secured creditor without consideration to the proof of claim that it files with the court.

There are abundant policy considerations which lend support to the type of conditional approval of the confirmed chapter 13 plan's treatment of a secured creditor. The deadline for filing a proof of claim is set ninety (90) days from the 11 U.S.C. §341 Meeting of Creditors. Presently under the Bankruptcy Reform Act of 2005, and in this case under the prior act, confirmation of the chapter 13 plan occurs before the claims bar date set forth above.

6

Countrywide's assertion of finality would mean that creditors with impunity fail to file a proof of claim until after confirmation and not disclose the deficiency of their claims. Then await confirmation as their remedy.

In addition, under the Debtor's chapter 13 plan (and also the Trustee's model plan), paragraph II. F. 4. states that:

> A proof of claim or interest shall be deemed filed under 11 U.S.C. §501 for any claim or interest that appears in Classes Two, Three, Four or Five of this plan, except a claim or interest that is disputed, contingent or non-liquidated and labeled as such in this plan.

Countrywide's claim is treated under Class Two and Four. The paragraph, therefore, provides that Countrywide would have been conditionally paid as a secured creditor upon confirmation irrespective of its filing of a secured proof of claim. It, of course, could not be paid any better than the plan provided unless it filed a proof of claim. Thus, the chapter 13 plan defers to the proof of claim filed to supercede the provisions of the confirmed plan. The chapter 13 plan defers to the proof of claim as to the claimed amount and monthly payments under paragraph II.F.1. Countrywide has not cited any authority to the effect that a chapter 13 plan cannot defer its treatment and ultimate determination as a secured creditor to the claims objection process. The plan ultimately defers monthly payment amounts to the claims objection process. Countrywide was not bound by the monthly payment statement in the chapter 13 plan nor reciprocally should the Debtor be bound by the treatment of Countrywide's claim as secured wherein the right to determine its secured status was reserved. The reservation to litigate the claim was by both an adversary lawsuit and objection to proof of claim process. In effect, the filing of a proof of claim by any creditor post confirmation is a re-litigation of the terms of the confirmed chapter 13 plan to the extent that the plan permits such litigation.

Paragraph II. F. 3. as set forth above is another provision by which the confirmed plan defers to the claims objection litigation process and incorporates the same as part of the confirmed plan. Its statement that proof of claims filed at variance with the confirmed chapter 13 plan or related schedules shall be treated by the Trustee as "indicated in the proof of claim". This language is a reservation upon the part of creditor and Debtor to re-litigate the claim. The provision emphasizes the re-litigation reservation by using the phrase, "...unless provided otherwise by order of the Court." If the confirmation of the plan has the general res judicata effect that Countrywide asserts than this provision as well as all the other specific reservations are rendered null. A chapter 13 plan's provision are written prospectively thus the language contemplates possible adjudication of the rights of the parties prospectively.

The significance of paragraph II.F.3 is that, in essence, Countrywide has filed a proof of claim which is in

7

variance to its treatment and classification under the plan. Though Countrywide is a secured creditor vis-a-vis the Debtor, Countrywide is not a secured creditor via-a-vis unsecured creditors as it has an unperfected mortgage interest that is avoidable under 11 U.S.C. §544. Thus, it is subject to the plain language of paragraph II.F.3 by which the court can order a treatment of its claim other than provided in class two and five of the plan. There are, therefore, at least the three reservations of paragraphs II.B., II.F.3 & 4, which permit this court to litigate the issue of the treatment of Countrywide's proof of claim and render its claim as unsecured.

Debtor would adopt the authorities of Salt Creek Valley Bank v. Wellman (In re Wellman), 322 B.R. 298 (6th Cir. B.A.P. 2004), and In re Lewis, 8 B.R. 132 (Bankr. D. Idaho 1981), cited by Country wide as his own.

Debtor would further cite Andersen v. UNIPAC-NEBHELP (In re Andersen), 179 F.3d 1253, which states that it is the languarge of the Plan that is specifically adjudicated when a plan is confirmed to give it finality. In Andersen, the issue was the dischargeability of a student loan. The plan was confirmed with language that stated pursuant to 11 U.S.C. § 523(a)(8) the student loan creditor's claim would be determined as an undue hardship upon the Debtor and dischargeable:

> While Andersen surely had the burden of proving undue hardship, and while a discharge granted without such proof is inconsistent with the Code, **it is critical that HEAF, as the party affected by this determination, failed to properly challenge the language at issue**....

Countrywide fails to focus on the language of Debtor's confirmed plan. If it believed that the retention of its lien and secured status was a matter which should have reached a finality upon confirmation it should have objected to the language of the plan. It was the language of the plan in the above paragraphs which reserved the right of the Debtor to rely upon the claims objection process and the adversary lawsuit process to determine with finality Countrywide's treatment.

Debtor would agree with Countrywide as to the four required elements of *res judicata* found in Official Committee of Unsecured Creditors v. Callahan and Dallaacqua (In re Crowley, Milner & Company), 299 B.R. 830, (Bankr. E.D. Mich 2003) is correct. The four elements of *res judicata* are:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

It is clear that the first element is not fulfilled by the confirmation of the chapter 13 plan. The final decision provided by the confirmation of the chapter 13 plan was that the status of the lien of Countrywide and its continued

8

viability as a secured claim would reach a final determination in the claims objection process and adversary lawsuit process rather than confirmation. For this court to decide otherwise would require all confirmations to be held after the claims bar date as the confirmation of a chapter 13 plan would encourage the filing of false claims by creditors without recourse by the debtor or Trustee.

It is also clear that the third element of *res judicata* is not met. Although the matter of the perfection of Countrywide's lien could have been litigated by the parties prior to confirmation, the fact that it was not litigated by the parties does not mean that the plan has been adversely impacted by the failure to do so. If Debtor continues to pay the chapter 13 plan, the debtor will benefit all the other general unsecured creditors by enabling them to receive a greater dividend as the Debtor is committed to a three (3) year plan irrespective of the base plan dividend payable to unsecured creditors. The only adverse impact suffered is suffered by Countrywide who failed to object to the confirmation of the plan.

To require Debtor and also the chapter 13 Trustee to object to a proof of claim prior to confirmation of a chapter 13 plan would be to treat the filing of such a claim as tantamount to an objection to confirmation which it was not. Inasmuch as it is conceded by Debtor that the lien of a secured creditor may not be necessarily set aside by the objection process alone, Debtor would be required to commence an adversary lawsuit prior to confirmation as well. Such a requirement nullifies 11 U.S.C. § 546 as a statute of limitations upon which to commence adversary proceedings pursuant to 11 U.S.C. § 544.

Debtor does not have to rely upon the exception cited by Countrywide in 11 U.S.C. § 1123(b)(3)(B) to reserve the ability to challenge a proof of claim post-confirmation. Debtor may include under 11 U.S.C. § 1322(b)(10) [§ 1322(b)(11) BAPCPA] "any other appropriate provision not inconsistent with this title" The cited statute thus permits Debtor to rely upon the claims objection process in the provisions of its plan. The ability to object to a proof of claim post-confirmation is critical to the confirmation process. It is critical for the reason that this Court confirms chapter 13 plans prior to the claims deadline date. It is, therefore, appropriate that Debtor incorporate the claims objection process in its confirmed chapter 13 plan in order to litigate the validity of claims. It is appropriate inasmuch as there is no statutory time limitation upon the Debtor to object to a proof of claim. It is appropriate as the code permits the filing of an adversary lawsuit within two (2) years after commencement of the case or one (1) year after the appointment of a

9

trustee whichever is later. Either deadline is after the confirmation of the plan.

Countrywide should not be heard to invoke the equitable principles of either laches or estoppel.

Countrywide once again argues that Debtor had the duty to object to its filed proof of claim prior to confirmation. Countrywide attempts to place a higher obligation upon the Debtor than that placed on him by the code while ignoring its own duty to object to the language of the plan. Countrywide makes the astonishing statement that the Debtor and Trustee "had the ability to determine whether Countrywide's mortgage security interest was properly recorded" and indicates they could have made a determination through "a simple search of public records". The shift of the burden of proof with regard to Countrywide's secured status is not supported by the Bankruptcy Rules.

Bankruptcy Rule 3001(d) firmly places evidence of Countrywide's perfection of security interest upon Countrywide and not upon Debtor nor Trustee. It provides:

> Evidence of perfection of security interest. If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.

Countrywide further states that "if Debtor had filed his complaint prior to confirmation of his Plan, then Countrywide would have objected to Debtor's proposed plan". Countrywide fails to explain, however, why it would have objected to Debtor's proposed plan. After all, Countrywide's entire argument before this court is based upon its reliance upon the secured status allegedly granted in the confirmed plan. Countrywide also makes the absurd statement "if Debtor is permitted to challenge Countrywide's interest in post-confirmation proceedings, then no creditor can trust that its treatment under a confirmed plan will remain valid and unchallenged. Bankruptcy courts would be overwhelmed with adversary proceedings seeking post-confirmation relief". Debtor agrees that no creditor including Countrywide should trust that its treatment under the confirmed plan will remain valid when it knows that its claim is unperfected. It should not be able to rely upon confirmation when confirmation will occur prior to the filing of claims bar date. Bankruptcy courts are not presently overwhelmed with adversary proceedings seeking pre-confirmation relief in the matter of avoidance of liens by either the debtor or the trustee. Therefore, there is no reason that bankruptcy courts would be overwhelmed post-confirmation.

Countrywide states its argument for the application of equitable estoppel that "neither a debtor nor a trustee should be encouraged to sit idly by while parties proceed to their detriment, relying on the creditor's treatment under a confirmed plan and the debtor's and trustee's silence." It appears that this is precisely what Countrywide attempted to

do when it brought its motion on June 6, 2005 for the purpose of lifting the automatic stay to record its unperfected mortgage thereby remedying its proof of claim deficiency. Countrywide has, therefore, unclean hands with respect to its own claim of equitable estoppel or laches.

Debtor is not asserting a power to avoid the lien and secured status of Countrywide solely for his own benefit. Debtor, in fact, seeks the avoidance with some trepidation. Debtor must successfully complete his chapter 13 plan. If there is a dismissal of the Debtor's chapter 13 plan, the Debtor would still be subject to the lien of Countrywide. 11 U.S.C. §349(a)(1)(B) states that the effect of the dismissal of Debtor's chapter 13 plan would reinstate "any transfer, avoided under section 522, 544,..." Debtor's payments under the confirmed plan would not have been in accordance with the monthly payments required by his mortgage and note. Upon dismissal Debtor would be hopelessly in arrears in the mortgage and be subject to an immediate foreclosure. Debtor has not abused the Bankruptcy Code but has merely stepped into the shoes of a trustee in order to secure the benefits of setting aside Countrywide's lien for the benefits of creditors and himself.

**DEBTOR IS ENTITLED TO SUMMARY JUDGMENT UNDER 11 U.S.C. §544 AS COUNTRYWIDE HAS ADMITTED THAT ITS MORTGAGE IS UNRECORDED AND, THEREFORE, UNPERFECTED.**

11 U.S.C. § 544(a)(3) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Debtor has admitted in his statement of facts within this brief and in his pleadings before this court that its mortgage interest is unrecorded. It is well established Michigan law that an unrecorded mortgage can be voided.

> A mortgage is a conveyance subject to the requirement that if it is not recorded as provided by law, it is void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion of it, whose conveyance is recorded before the mortgage. Michigan Law Practice. Real Property §§ 783.

Countrywide's lien should be avoided under 11 U.S.C. §544 and the creditor's claim determined to be unsecured.

**CONCLUSION AND RELIEF REQUESTED**

11

For the reasons set forth above, Debtor requests that Countrywide's Motion for Summary Judgment be denied.

/s/
CHARLES J. SCHNEIDER (P27598)
LAW OFFICE OF CHARLES J. SCHNEIDER, P.C.
Attorney for Debtor
39319 Plymouth Rd., Ste. 1
Livonia, MI 48150
(734) 591-4890

Dated: November 19, 2005

IN RE:
    Terry S. Hearn

        Case No. 04-62224-PJS
        Chapter 7
        HON. Phillip J. Shefferly

    Debtor(s).
_____/

Terry S. Hearn,

    Plaintiff,        Adversary Case No. 05-5330
v.        HON. Phillip J. Shefferly

The Bank of New York and
Countrywide Home Loans, jointly and severally,

    Defendant.
_____/

## PLAINTIFF'S ANSWER TO DEFENDANT, COUNTRYWIDE HOME LOANS, AS NOMINEE FOR BANK OF NEW YORK'S, MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.BANKR.P. 7056

NOW COMES Terry S. Hearn, Plaintiff/Debtor herein, by and through his attorney, CHARLES J. SCHNEIDER, and for the reasons set forth in the accompanying Brief in Support of Plaintiff's Answer to Defendant, Countrywide Home Loans, as Nominee for Bank of New York's Motion for Summary Judgment Pursuant to F.R.Bankr. P. 7056, requests that this Court deny Defendant's Motion for Summary Judgment and enter Plaintiff's Order attached as Exhibit "A".

        /s/
        CHARLES J. SCHNEIDER (P27598)
        ELIZABETH M. ABOOD (P46304)
        MELISSA A. CAOUETTE (P62729)
        Attorneys for Plaintiff/Debtor
        39319 Plymouth Rd., Ste. 1
        Livonia, MI 48150
        (734) 591-4890

Dated: November 19, 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

    Terry S. Hearn

          Case No. 04-62224-PJS
          Chapter 7
          HON. Phillip J. Shefferly

    Debtor(s).
_____/

Terry S. Hearn,

    Plaintiff,          Adversary Case No. 05-5330
v.          HON. Phillip J. Shefferly

The Bank of New York and
Countrywide Home Loans, jointly and severally,

    Defendant.
_____/
CHARLES J. SCHNEIDER (P27598)
LAW OFFICE OF CHARLES J. SCHNEIDER, P.C.
Attorney for Debtor/Plaintiff
39319 Plymouth Rd., Ste. 1
Livonia, MI 48150
(734) 591-4890
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    This matter having come on for consideration based upon the filing of Defendant's Motion for Summary Judgment pursuant to F.R.Bankr. P. 7056;

    NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is hereby denied.

EXHIBIT A

IN RE:
    Terry S. Hearn

                Case No. 04-62224-PJS
                Chapter 7
                HON. Phillip J. Shefferly

        Debtor(s).
_____/
Terry S. Hearn,

        Plaintiff,                Adversary Case No. 05-5330
v.                                        HON. Phillip J. Shefferly

The Bank of New York and
Countrywide Home Loans, jointly and severally,

        Defendant.
_____/

**PROOF OF SERVICE**

    MARGARET A. MARTIN, certifies that she is employed by the Law Office of Charles J. Schneider, attorney for Plaintiff, and says that on November 21, 2005, she served a copy of PLAINTIFF'S ANSWER TO DEFENDANT, COUNTRYWIDE HOME LOANS, MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF ANSWER to:

U.S. Trustee
211 West Fort Street
Suite 700
Detroit, MI 48226

J, Kyle Guthrie
8163 Grand River Ave.
Suite 400
Brighton, MI 48116

Electronically pursuant to the court notice of service and to those not electronically registered by placing documents in an envelope, correctly addressed and placing same in the U.S. Mail with postage prepaid.

                                          /s/
                                          MARGARET A. MARTIN
                                          LAW OFFICE OF CHARLES J. SCHNEIDER, P.C.
                                          39319 Plymouth Rd., Ste. 1
                                          Livonia, MI 48150
                                          (734) 591-4890