UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Terry S. Hearn,                                                   Case No. 04-62224
                                                                                        Chapter 13
                         Debtor.                                  Hon. Phillip J. Shefferly
_____/

Terry S. Hearn,

                         Plaintiff

v.                                                                                                        Case No. 05-5330

Bank of New York, Countrywide Home Loans,

                         Defendants.
_____/

**OPINION (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
AND (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. <u>Introduction</u>

      This matter is before the Court upon a complaint filed by Terry S. Hearn, the Debtor in this Chapter 13 case, to avoid a lien. The complaint seeks to avoid a mortgage lien held by Countrywide Home Loans as nominee for Bank of New York under 11 U.S.C. § 544.[1] Plaintiff filed a motion for summary judgment. Defendant filed a motion for summary judgment. The Court conducted a hearing on the cross motions for summary judgment on January 13, 2006. The Court took the motions for summary judgment under advisement at that hearing. For the reasons set forth in this opinion, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion

---

[1] All references to the Bankruptcy Code in this opinion are to the Bankruptcy Code as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. This is because the Debtor filed his chapter 7 case prior to October 17, 2005, the effective date of that Act.

for summary judgment.

## II. Facts

On September 19, 2003, the Debtor borrowed $103,500 from Encore Credit Corporation and granted it a mortgage upon the Debtor's residence located at 16860 Collingham Dr., Detroit, Michigan. The mortgage was assigned to the Defendant on September 29, 2003. However, for reasons that are not explained in the record, neither the mortgage nor the assignment were ever recorded with the Wayne County Register of Deeds.

On August 6, 2004, the Debtor filed a Chapter 13 petition. The Debtor's schedule A showed that the Debtor owned the real property at 16860 Collingham in fee simple, that it had a market value of $120,000, and that it was encumbered by a secured claim in the amount of $102,899.68. The Debtor's schedule D showed that the secured claim was held by the Defendant. The schedule did not designate the secured claim as contingent, unliquidated or disputed. On the same day that he filed his petition, the Debtor also filed a Chapter 13 plan (docket entry No. 6). The plan showed the Defendant as holding a secured claim to be paid in monthly payments by the Debtor. Section II of the plan entitled "General Provisions" indicated that the Debtor's plan followed the model plan used in this district in all respects with certain specified exceptions. One of the specific exceptions referred to was Section II.B entitled "Vesting, Possession of Estate Property and Lien Retention." That section reads as follows:

> VESTING, POSSESSION OF ESTATE PROPERTY AND LIEN RETENTION: Upon confirmation of the Plan, all property of the estate shall vest in the debtor [11 U.S.C. § 1327(b)]. The debtor shall remain in possession of all property of the estate during the pendency of this case unless specifically provided herein [11 U.S.C. § 1306(b)]. All secured creditors shall retain the liens securing their claims unless otherwise stated.
>
> Attached to the plan as required by L.B.R. 3015-1(b)(1) (E.D.M.) was an analysis of what

-2-

creditors would receive if the Debtor's case were a Chapter 7 case. That analysis showed that unsecured creditors would receive no distribution in a Chapter 7 case.

On October 26, 2004, the Debtor filed a modification of his plan (docket entry No. 32). The modified plan continued to list the Defendant as a secured creditor holding a lien upon the Debtor's residence and provided for monthly payments to be made on this secured claim. However, the modified plan significantly changed Section II.B. from the original plan. That provision in the modified plan reads as follows:

> <u>VESTING, POSSESSION OF ESTATE PROPERTY AND LIEN RETENTION</u>:
> Upon confirmation of the Plan, all property of the estate shall not vest in the debtor [11 U.S.C. § 1327(b)] but shall remain property of the estate. The debtor shall remain in possession of all property of the estate during the pendency of this case unless specifically provided herein [11 U.S.C. § 1306(b)]. All secured creditors shall retain the liens securing their claims subject to the avoidance powers of the Debtor granted herein and provided the Debtor retains possession of the collateral and unless otherwise stated. Debtor shall have standing to commence turnover actions under 11 U.S.C. § 542, to assert strong-arm powers under 11 U.S.C. § 544, to avoid statutory liens under 11 U.S.C. § 545, to recover preferences under 11 U.S.C. § 547 and/or to avoid fraudulent conveyances under 11 U.S.C. § 548 and in furtherance thereof commence adversary proceedings.

The modified plan was accompanied by a liquidation analysis which again showed the Defendant's lien upon the Debtor's residence and showed that there would be no distribution for unsecured creditors if this were a case under Chapter 7 of the Bankruptcy Code.

The Defendant did not file any objections to the Debtor's modified plan. On November 23, 2004, the Court held a hearing on confirmation of the Debtor's modified plan. The Defendant did not appear at the confirmation hearing. The modified plan was confirmed by entry of an order on November 24, 2004. The Debtor has made the payments under the plan since confirmation.

Apparently, sometime after the order confirming the plan was entered, the Defendant learned that its mortgage had not been recorded. The Defendant requested that the Debtor agree to lift the

automatic stay so that the Defendant could record its mortgage. The Debtor declined that request. On June 6, 2005, the Defendant filed a motion in the Debtor's Chapter 13 case to lift the automatic stay for the limited purpose of permitting it to record its mortgage and assignment of mortgage. The Debtor objected. The Court held a hearing on July 1, 2005 and was informed at the hearing that the Debtor had filed this adversary proceeding seeking to avoid the unrecorded mortgage under § 544 of the Bankruptcy Code. Because the Debtor had made all of his payments under the Chapter 13 plan, and because the Debtor had filed this adversary proceeding seeking to avoid the Defendant's mortgage, the Court concluded that the Defendant had not shown cause to lift the automatic stay and, therefore, denied the Defendant's motion. The parties then pursued resolution of their dispute through this adversary proceeding.

### III. Standard

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Reiger, 150 F.2d 561, 566 (6th Cir. 1998) (quoting Anderson, 447 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International

Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. <u>Berryman v. Reiger</u>, 150 F.2d 561, 566 (6th Cir. 1998) (citing <u>Anderson</u>, 447 U.S. at 256).

IV. <u>Analysis</u>

A. <u>Standing to bring the § 544 avoidance action</u>

A threshold issue raised by the Defendant is whether the Debtor has standing to bring an avoidance action under § 544. The Defendant asserts that only a trustee may bring an avoidance action under § 544. The Debtor asserts that he may also bring an avoidance action under § 544. At the hearing on July 1, 2005 on the Defendant's motion to lift the automatic stay, the Chapter 13 Trustee agreed with the Debtor that the Debtor has standing to bring the avoidance action.

Section 544(a) provides that "the trustee" may avoid any transfer of property under that section of the Bankruptcy Code. 11 U.S.C. § 544(a). There is no specific section of the Bankruptcy Code that authorizes a debtor to prosecute an action under § 544. Section 1303 of the Bankruptcy Code authorizes the Debtor to have certain of the rights and powers granted to a trustee under § 363 of the Bankruptcy Code, but makes no mention of powers granted to a trustee under other sections of the Bankruptcy Code such as § 544. By way of comparison, a Chapter 11 debtor has a more extensive list of rights and powers set forth in § 1107 of the Bankruptcy Code. Similarly, in Chapter 12, § 1203 of the Bankruptcy Code provides a Chapter 12 debtor with various rights and powers

-5-

beyond those that are extended to a Chapter 13 debtor in § 1303.

While it appears then that there is no specific statutory authority for a Chapter 13 debtor to exercise the avoidance or recovery powers of § 544, there are reported cases going both ways on this issue. See 1 Keith M. Lundin, Chapter 13 Bankruptcy § 53.1 n.7 (3d ed. 2004) (collecting cases). There are no controlling cases in the Sixth Circuit regarding this issue. The Court finds somewhat appealing the analysis of those cases that conclude that a Chapter 13 debtor does not have standing to prosecute an avoidance action. See In re Mast, 79 B.R. 981 (Bankr. W.D. Mich. 1987). However, the Court concludes in this case that it need not reach the issue of a Chapter 13 debtor's standing to bring this avoidance action, because the order confirming plan in this case has already disposed of the issue in this case.

In the modified plan filed by the Debtor on October 26, 2004, the issue of the Debtor's standing to bring an avoidance action under § 544 of the Bankruptcy Code was explicitly addressed.

> Debtor shall have standing to commence turnover actions under 11 U.S.C. § 542, to assert strong arm powers under 11 U.S.C. § 544, to avoid statutory liens under 11 U.S.C. § 545, to recover preferences under 11 U.S.C. § 547 and/or to avoid fraudulent conveyances under 11 U.S.C. § 548 and in furtherance thereof commence adversary proceedings.

(First Amended Plan, Section II.B. (docket entry No. 32).)

Section 1327(a) of the Bankruptcy Code provides that: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The effect of § 1327 was discussed in Salt Creek Valley Bank v. Wellman (In re Wellman), 322 B.R. 298 (B.A.P. 6th Cir. 2004). In that case, a bank held a mortgage upon the debtors' real estate. 322 B.R. at 299. The bank filed a motion to lift the automatic stay. While the

motion was pending, but before it came up for hearing, the debtors' Chapter 13 plan was confirmed. Id. at 300. Notwithstanding confirmation of the plan, the bank argued that it should be permitted to go forward with its pre-confirmation motion for relief from stay even after confirmation had occurred. The bankruptcy court held that the provisions of the debtors' confirmed plan bound the bank and that the bank should not then be permitted to go forward with its motion for relief from stay. The Bankruptcy Appellate Panel affirmed. Relying upon § 1327(a), the Bankruptcy Appellate Panel concluded that post-confirmation "proceedings inconsistent or incompatible with the confirmed plan are improper." Id. at 301. The Court went on to state that "[o]nce a plan is confirmed, it is treated as the exclusive and transcendent relationship between the debtor and the creditor." Id. Therefore, the Court concluded that the bank could not prosecute its motion for relief from stay post-confirmation based upon events that had occurred pre-confirmation. Id. at 301-02.

In this case, the Debtor's modified plan expressly addressed the Debtor's standing to bring this adversary proceeding. The Defendant had the opportunity to object to the language contained in Section II.B of the Debtor's modified plan. An objection to the language in the Debtor's plan, which recognizes and confers upon the Debtor standing to prosecute a § 544 action, may have been well considered. However, it was not made. By electing not to object to this language, the Defendant is bound to it by § 1327(a).

It is true that a Chapter 13 debtor may not include provisions in a Chapter 13 plan that are illegal, and that violate the due process rights of creditors. However, the inclusion of a provision addressing the Debtor's standing to prosecute a § 544 action is not in this Court's view such a provision. In Educational Credit Management Corp. v. Ruehle (In re Ruehle), 412 F.3d 679 (6th Cir. 2005), the debtor attempted to discharge a student loan through her chapter 13 plan, without

filing the required adversary proceeding under § 523(a)(8) of the Bankruptcy Code and Bankruptcy Rules 4007 and 7001(6). 412 F.3d at 681. The bankruptcy court determined that such a provision in a Chapter 13 plan violated the creditor's due process rights, "and was therefore not merely illegal, but void." Id. The Bankruptcy Appellate Panel affirmed, as did the U.S. Court of Appeals for the Sixth Circuit. The Sixth Circuit agreed with the bankruptcy court's "astute analysis" and conclusion that "'discharge by declaration' of student loan debt is not only invalid but void, and therefore, subject to being set aside upon a Rule 60(b)(4) motion." Id. at 684.

Unlike the attempted "discharge by declaration" in Ruehle, the Debtor's modified plan in this case does not violate the due process rights of the Defendant by, for example, purporting to adjudicate the merits of a § 544 avoidance action. Instead, the modified plan purports only to address the question of whether the Chapter 13 Trustee or the Debtor will have standing to bring such adversary proceeding. The due process rights of the Defendant were not violated by the inclusion of this provision in the Debtor's modified plan.

Although the Court concedes that there is a split of authority on who should have the standing to bring the avoidance action, the Court concludes that, by its failure to object to this language in the Debtor's modified plan, § 1327(a) binds the Defendant to the Debtor's resolution of this issue. The Court therefore finds that the Debtor does have standing to prosecute this § 544 avoidance action.

B.     Elements of the § 544 avoidance action

Section 544(a)(3) provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by – . . .

-8-

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

The Defendant admits that its mortgage is unrecorded. In Michigan, a mortgage that is not recorded as provided by law is void as against any subsequent purchaser in good faith and for a valuable consideration of such real estate whose conveyance is recorded before such mortgage. Mich. Comp. Laws Ann. § 565.29. There is no genuine issue of fact in this case as to any of the elements of § 544(a)(3). Each of them are present. Therefore, unless one or more of the affirmative defenses raised by the Defendant is applicable, the Debtor is entitled to judgment on its complaint under § 544 of the Bankruptcy Code.

C.     Neither res judicata principles nor § 1327(a) bar Debtor from filing this action

The Defendant asserts that § 1327(a) and general principles of res judicata preclude the Debtor from bringing this adversary proceeding and bind the Debtor to the treatment of the Defendant's mortgage as an allowed secured claim.

First, Defendant argues that § 1327(a) precludes the Debtor from bringing this action. As noted above in the discussion of the Debtor's standing, § 1327(a) binds debtors and creditors to the provisions of a confirmed plan. 11 U.S.C. § 1327(a). The Court agrees that § 1327(a) binds both the Debtor and the Defendant to the Debtor's modified plan. However, the Court is not persuaded that this argument helps the Defendant's cause. The modified plan specifically stated in Section II.B that: "All secured creditors shall retain the liens securing their claims subject to the avoidance powers of the Debtor granted herein . . . to assert strong-arm powers under 11 U.S.C. § 544 . . . ."

As the Bankruptcy Appellate Panel observed in Wellman, § 1327(a) means that "proceedings

-9-

inconsistent or incompatible with the confirmed plan are improper." 322 B.R. at 301. Far from being inconsistent or incompatible with the Debtor's modified plan, the filing of this adversary proceeding was explicitly contemplated by and disclosed in the Debtor's modified plan. Section 1327(a) does not bar the Debtor from bringing this action.

The Defendant also urges the Court to apply § 1327 in conjunction with more general principles of res judicata. "As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered a final judgment on the merits." Fellowship of Christ Church v. Thorburn, 758 F.2d 1140, 1143 (6th Cir. 1985) (citing Migra v. Warren City School District, 465 U.S. 75 (1984)). Res judicata, or claim preclusion, has the following four elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

Official Committee of Unsecured Creditors v. Callahan (In re Crowley, Milner & Co.), 299 B.R. 830, 844 (Bankr. E.D. Mich. 2003) (internal quotation marks and citation omitted).

The Court rejects the Defendant's res judicata argument for the following reasons. Although three of the four elements necessary for res judicata may arguably be present in this case (elements 1, 2 and 4), the entitlement of the Debtor to relief under § 544 to avoid the mortgage lien of the Defendant was specifically not litigated in the Chapter 13 modified plan filed by the Debtor. That element is simply not present. There was no adjudication of the rights of the Debtor to avoid the Defendant's lien in the modified plan. Instead, the Debtor's modified plan expressly dealt with this issue by providing that this issue would be litigated in an adversary proceeding brought under § 544. Rather than trying to sidestep the Defendant's due process rights to defend an adversary proceeding

-10-

brought under § 544, the Debtor's modified plan specifically provided that the Debtor would seek such relief if at all in an adversary proceeding brought under § 544. Therefore, the third element necessary for res judicata is not present.

Moreover, even if the Court were to conclude that all four elements of res judicata are present, there is an exception to the application of principles of res judicata that has developed in Chapter 11 cases, which the Court finds persuasive by analogy here. In Browning v. Levy, 283 F.3d 761 (6th Cir. 2002), the Sixth Circuit Court of Appeals held that, although the confirmation of a plan of reorganization has the effect of a judgment and res judicata principles bar relitigation, there is an exception to the general rule. Id. at 774-75. "The Browning court, as well as courts in other jurisdictions, recognized that the res judicata effects of a confirmation order may be avoided where the plan of reorganization expressly reserves the right to litigate certain claims." In re Crowley, Milner and Co., 299 B.R. at 846 (citing Browning v. Levy, 283 F.3d at 774-75) (holding that language reserving rights needs to be specific enough to put the parties on notice to be given effect).

In Browning, the Chapter 11 disclosure statement contained the following "omnibus reservation of rights":

> In accordance with section 1123(b) of the Bankruptcy Code, the [Debtor] shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

283 F.3d at 768-69. After extensive discovery, evidence was uncovered that the debtor's former counsel forced the debtor to enter into an adverse pre-petition settlement agreement. Id. at 767-68. The debtor sued its former counsel post-confirmation for legal malpractice, alleging that the defendant had fraudulently induced the debtor to accept the settlement agreement, which led to a

-11-

decline in the value of the debtor's shares and the debtor's eventual financial collapse. Id. The defendant moved for summary judgment, arguing that the reservation in the disclosure statement was insufficient to overcome the res judicata effect of the order confirming plan. Id. at 774. The Sixth Circuit agreed, finding that "a general reservation of rights does not suffice to avoid res judicata." Id. (citing D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York, 112 F.3d 257, 260 (7th Cir. 1997)). The court explained that the debtor's

> blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the debtor]'s claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names [the defendant] nor states the factual basis for the reserved claims. We therefore conclude that [the debtor]'s blanket reservation does not defeat the application of res judicata to its claims against [the defendant].

Id. at 775.

In Slone v. M2M International, Inc. (In re G-P Plastics, Inc.), 320 B.R. 861 (E.D. Mich. 2005), the Court held that a blanket reservation of rights provision in the plan is insufficient to avoid the res judicata effect of the plan. Id. at 868. The facts in Slone are relatively simple. Two years after filing for bankruptcy relief under Chapter 11, the debtor filed a lawsuit against the defendant, seeking to recover based on an alleged preferential payment, a fraudulent conveyance, breach of contract, unjust enrichment, and conversion. Id. at 863-64. The bankruptcy court held that the debtor's claims were barred by res judicata, and the plan did not preserve its claims against the defendant. Id. at 864. The court found that all four elements of res judicata were met. Id. at 865-67. The debtor also argued that it adequately preserved its claims against M2M, regardless of the res judicata effect. Id. at 867. The debtor used the following reservation of rights: "Notwithstanding the confirmation of the Plan, except as stated herein, the Reorganized Debtor shall retain all causes of action which the Debtor and/or the Debtor in Possession may have under the Bankruptcy Code,

-12-

including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code."[2] Id. at 868. The court rejected the Debtor's argument, holding that the reservation of rights was simply a blanket reservation reserving all causes of action and, therefore, should be given no effect. Id.

It is true that there is no parallel provision in Chapter 13 to § 1123(b)(3)(B) that specifically authorizes a Chapter 11 plan of reorganization to retain certain causes of action to be enforced post-confirmation. However, there is nothing in § 1322 of the Bankruptcy Code that would preclude the enforcement of causes of action existing in favor of a debtor post-confirmation. Section 1322(b)(10) permits a plan to "include any other appropriate provision not inconsistent with this title." An adversary proceeding brought under § 544(a)(3) is not "inconsistent with this title."

The Defendant asserts that even if a reservation of rights such as that which was contained in the Debtor's modified plan in Section II.B. is permissible, the particular reservation in this case was not sufficiently specific to be enforceable. The Defendant relies for support upon Crowley, Milner and Browning. However, unlike Crowley, Milner and Browning, the cause of action in this case is for avoidance of a lien under a specific section of the Bankruptcy Code. In contrast, the causes of action in Crowley, Milner were based on breach of fiduciary duty and other state common law theories pertaining to very generally described acts and conduct of certain unnamed officers and directors. Here, the cause of action that was reserved by the Debtor pertains solely to the avoidance of a lien under § 544. The liens that exist in this case were specifically described as secured claims by the Debtor's modified plan. A cause of action to avoid a lien of a secured claim that is listed in the Debtor's modified plan and schedules is different in kind in the Court's view than a reservation of all causes of action that might conceivably exist under applicable non-bankruptcy law arising out

---

[2] The Slone court points out that the reservation used by the debtor was "virtually identical" to the reservation used in Browning. 320 B.R. at 867.

of any pre-petition conduct of any former officers and directors pertaining to any matter. The problem with the reservation in Crowley, Milner is that it just was not specific enough to put on notice those parties against whom such claims might be brought such that creditors could intelligently evaluate and ultimately vote on the debtor's plan of reorganization. There is no such absence of due process in this case. First, the Debtor's modified plan explicitly named who the § 544 actions might be brought against (i.e. - holders of secured claims). Next, the plan specifically listed holders of secured claims, including the Defendant. Finally, the plan specifically listed the cause of action that might be brought (i.e. - § 544).

In this case, the Court concludes that the reservation is factually distinguishable from the reservation that was found insufficiently specific in Crowley, Milner and Browning, and that the reservation of rights by the Debtor in this case is sufficiently specific to provide an exception to the application of principles of res judicata. Therefore, the Court holds that neither the application of § 1327(a) nor general principles of res judicata can be successfully advanced by the Defendant to defeat the Debtor's cause of action.

D.  <u>The other affirmative defenses raised by Defendant have no application</u>

The Defendant also argues that even if the Court holds that res judicata does not bar the Debtor's complaint, and the reservation of rights is specific enough to be given effect, equitable defenses still apply to bar the Debtor's § 544 claim. The Defendant relies on the doctrines of laches and estoppel.

"Laches is the negligent and unintentional failure to protect one's rights. A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the other party asserting it." Herman Miller, Inc. v. Palazzetti Imports and Exports,

-14-

Inc., 270 F.3d 298, 320 (6th Cir. 2001) (quotation marks and citations omitted); see also Ruiz v. Shelby County Sheriff's Dept., 725 F.2d 388, 393 (6th Cir. 1984) (requiring "unexcused or unreasonable delay [that] has prejudiced [an] adversary"); Taylor v. S.S. Kresge Co., 40 N.W. 636, 640 (Mich. 1950) ("[L]aches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right.") (quotation marks and citations omitted); Torkis v. Torkis, 486 N.W.2d 107, 110 (Mich. Ct. App. 1992) (requiring "passage of time, prejudice to defendant, and lack of diligence by the plaintiff") (citation omitted).

To prevail, the Defendant must first show that the Debtor failed to use diligence. The Defendant argues that the Debtor failed to search the public records to find out whether the mortgage had been recorded prior to confirmation. However, the Defendant fails to identify any authority that requires the Debtor to make such a search. Moreover, it is the Defendant's interest that is protected by the recording of the mortgage, not the Debtor's. The Defendant has failed to meet the first element of laches.

Even if the Defendant meets the first element of laches, it cannot meet the second element. The second element of laches requires the Defendant to show that it was prejudiced by the time delay. The Defendant argues that, because the Debtor waited seven months past confirmation to bring this adversary proceeding, the Defendant is prejudiced. However, the Debtor's delay has not negatively impacted the Defendant's ability to defend this action. Had the Debtor brought this avoidance action pre-confirmation, the action would have been successful as even the Defendant concedes that its mortgage was not recorded and all of the elements of § 544(a)(3) were present. Therefore, the Defendant has failed to show that the elements of laches exist in this case.

The Defendant also relies upon the equitable doctrine of estoppel. It is comprised of three

elements: "(1) a party by representations, admissions, or silence intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this behalf; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." Schmude Oil Co. v. Omar Operating Co., 458 N.W.2d 659, 664 (Mich. Ct. App. 1990) (citation omitted).

The Defendant argues that the Debtor had an opportunity to search the land records, find that the mortgage had not been recorded, and object to the Defendant's claim, all pre-confirmation. The Defendant further asserts that it relied on the treatment of its secured claim in the modified plan and on the Debtor's silence in not objecting to it, and that its reliance was justifiable. Lastly, the Defendant argues that it will be greatly prejudiced if the Court now allows the Debtor to proceed with this adversary complaint. The Defendant also warns the Court that granting the Debtor the relief he now seeks would prevent finality in Chapter 13 bankruptcy proceedings.

The Court is not persuaded by the Defendant's estoppel defense. There is no evidence that the Debtor either expressly or by his silence represented to the Defendant that its mortgage was recorded. The modified plan says nothing about recording the mortgage. Further, it would not be justifiable for a mortgage holder to rely on a statement in a Chapter 13 plan that it held a "secured claim" and then fail to act to record the mortgage. That would be particularly unjustifiable where the plan itself said that such "secured claim" was still subject to avoidance under § 544. The Court rejects the Defendant's estoppel defense.

## IV. Conclusion

Although the standing issue may have been a close call had it actually been raised and litigated before confirmation, the Court holds that the Defendant is bound under § 1327(a) to the

-16-

reservation of rights and the assertion of standing by the Debtor contained in his modified plan. The Court also finds that the elements of § 544(a)(3) are present in this case such that the Debtor is entitled to a judgment that avoids the Defendant's unrecorded mortgage lien. However, in listening to the arguments in this case and reviewing the pleadings filed by the parties, there is something that has struck the Court as patently unfair about the result that the Court's holdings may potentially produce in this case. The Debtor's modified plan that was confirmed does not provide for a distribution in full to unsecured creditors. Instead, it provides a distribution of only $3,811.14, which the Debtor estimates to be 15% of its unsecured claims. If the Debtor's § 544(a)(3) action is successful, the question arises as to who receives the benefit of avoiding the Defendant's lien of $103,000 upon the Debtor's residence. Although not addressed by either the Debtor or the Defendant, § 551 of the Bankruptcy Code makes it clear that the avoided lien is preserved for the benefit of the estate with respect to property of the estate. In this case, the Debtor's residence on Collingham is property of the estate under the modified plan (see First Amended Plan, Section II.B.). The effect then of avoiding the Defendant's lien is to preserve for this estate $103,000 of value. The Debtor's liquidation analysis attached to its original plan indicated that unsecured creditors would receive nothing in a Chapter 7 liquidation. So too did the liquidation analysis attached to the Debtor's modified plan. Indeed, the Debtor filed a second modified plan on December 22, 2005 which, in spite of the existence of this adversary proceeding seeking to avoid the Defendant's lien, still shows that there would be no distribution in a Chapter 7 case to unsecured creditors because of the existence of this Defendant's lien. If the mortgage lien held by the Defendant is to be avoided, then the Defendant will hold an unsecured claim in the amount of $103,000, yet it will have had no opportunity to participate in a meaningful way as an unsecured creditor in this case, unless the Court

requires a post-confirmation modification of the Debtor's plan to reflect and take into account the value preserved for this estate under § 551 because of the Debtor's successful § 544 lien avoidance action.

If the Debtor had successfully brought his § 544 action prior to confirmation, then the $103,000 lien that was avoided would have been preserved for the benefit of the estate. Creditors would therefore have had the pre-confirmation right to insist that this value be made available to them under the Debtor's plan to satisfy the best interest of creditors' test codified in § 1325(a)(4) of the Bankruptcy Code. It would be unfair and violative of the Defendant's due process rights to permit the Debtor to first confirm a plan based upon a liquidation analysis that recognizes the efficacy of Defendant's lien in a Chapter 7 case, and then subsequently permit the Debtor to avoid that very lien post-confirmation without also placing the value of the avoided lien back into the estate for the benefit of creditors. That would grant the Debtor a windfall.

Although there were initially suggestions by each party of sandbagging this issue by the other party, there is nothing in the record to suggest that either the Debtor or the Defendant knew prior to confirmation of the Debtor's modified plan that the Defendant's mortgage lien was unrecorded. It appears to be a fact that came to light post-confirmation. That explains why the Debtor's modified plan treats the Defendant as the holder of a secured claim. It also explains why the Defendant did not object to the language in the modified plan permitting the Debtor to retain causes of action under § 544. But to truly place the parties back in the positions they would have been in if this cause of action had been prosecuted pre-confirmation will require a plan modification to enable unsecured creditors, including the Defendant as the holder of the largest unsecured claim, to insist that the Debtor's plan comply with § 1325(a)(4) by providing creditors at least as much as

they would receive in a Chapter 7 liquidation. The liquidation analysis attached to the Debtor's modified plan is inaccurate. We now know that in a Chapter 7 liquidation, a Chapter 7 Trustee would have successfully brought an avoidance action under § 544 to avoid the lien of the Defendant. That means then that the value of the avoided lien on the Collingham property would have been preserved under § 551 and made available for unsecured creditors in a Chapter 7 estate. This result is not reflected in the liquidation analysis the Debtor submitted with his modified plan.

At the hearing on the motions for summary judgment, the Debtor's counsel recognized the inequity that would be caused if the Debtor, having successfully prosecuted this § 544 action, could now enjoy the benefits without having to share the preserved value of the avoided lien with his unsecured creditors. The Debtor's counsel assured the Court that if successful in this action, the Debtor would promptly file a plan modification providing his unsecured creditors (including the Defendant) with the preserved value of the avoided lien. The Court will hold the Debtor to that representation. Therefore, the Court requires that a plan modification be filed by the Debtor within thirty days from the date hereof accompanied by a Chapter 7 liquidation analysis that recognizes the value of the avoided lien in the event this case were a Chapter 7, and otherwise complies with the provisions of § 1329 governing post-confirmation plan modifications. The Court will enter a judgment in favor of the Debtor in this adversary proceeding and a separate order in the Chapter 13 proceeding regarding the required plan modification.

.

Entered: February 3, 2006

                                                        /S/ Phillip J. Shefferly
                                                         Phillip J. Shefferly
                                                         United States Bankrutpcy Juge